■ In the Matter of 151 WEST 140TH STREET TENANT ASSOCIATION, Respondent, v CITY OF NEW YORK et al., Appellants. —Judgment, Supreme Court, New York County (Kenneth L.

Shorter, J.), entered on or about November 1, 1988, annulling the determination of respondent New York City Department of Housing Preservation and Development (HPD) terminating the participation of petitioner 151 West 140th Street Tenant Association in its Tenant Interim Lease Program and remanding the matter to HPD for further proceedings reversed, on the law, without costs or disbursements, the petition denied and the determination reinstated.

HPD administers the city's Tenant Interim Lease (TIL) Program, which affords tenants living in city-owned buildings an opportunity to purchase the buildings and run them as not-for-profit housing cooperatives. As an intermediate step, tenant associations maintain and operate their buildings under a contract with the city known as a tenant interim lease, which has a standard term of 11 months and details the tenant association's responsibilities in managing the building. The first of the petitioner tenant association's interim leases for the building known as 151 West 140th Street was entered into in August 1979. The city and petitioner thereafter signed successive 11-month renewal leases for the subject premises, the last signed on February 6, 1987 for a term to run from December 1, 1986 to October 31, 1987. According to HPD petitioner had been continued in the program for more than nine years without being allowed to purchase the building because its membership never developed sufficient competence to proceed to the cooperative formation phase of the program. The director of the program, by letter dated September 16, 1987, informed petitioner that its interim lease was due to expire on October 31, 1987 and that, if it wished to renew, it would have to produce nine specified documents at an appointment with HPD on September 29, 1987. This letter also stated that if the requested documentation was not submitted the lease would not be renewed. Petitioner failed to keep the scheduled appointment or to submit the documents and allowed the lease to expire without executing a renewal. As a consequence, petitioner's formal participation in the program was at an end. Instead of immediately removing the management responsibility for the premises from petitioner, and returning the building to HPD's management, HPD afforded petitioner a further opportunity to enter into a renewal lease and to remedy its fiscal practices. An HPD audit of petitioner's finances in December 1987 noted that its bank account was overdrawn by $9,792.29, while monthly bank charges exceeded $200; large management fees were being taken by Ola Williams, the submanager, without the submission of

proper documentation to HPD; rent arrears were being written off as uncollectible without HPD's written approval, as required; and proper oversight of petitioner's fiscal performance and its handling of city funds in its possession was rendered impossible by petitioner's chronically late submission of reports. The tenant interim lease required reports for a particular month to be submitted by the 15th of the next month.

At a January 15, 1988 meeting HPD asked petitioner to turn its checkbook over to it while continuing to deposit rents in the same account. All invoices were to be submitted to HPD's Accounting and Compliance Unit; Williams, the submanager, was not to be involved in either the collection or disbursement of revenues. At this time petitioner submitted some of the nine documents requested by HPD in September 1987 as a condition to renewal of the interim lease. Included in the six which were not submitted were proof of liability insurance, minutes from the last election, current bank signature cards and copies of the bank resolution and the HPD bank rider for petitioner's bank account.

By letter of February 3, 1988, HPD summarized the issues discussed at a follow-up meeting on January 21 and the conditions in which petitioner would be permitted to remain in the TIL program. Although HPD stated that Williams may not be involved in management it later acceded to the tenants' wishes that she continue as submanager on condition that she and petitioner execute a submanagement agreement. The agreement was never executed.

On March 7, 1988, HPD wrote to petitioner's officers notifying them of the problems and requests previously brought to their attention but as yet unaddressed. Petitioner was directed to submit the rent receipt book, bank statements, financial reports, bills and bank deposit slips to HPD no later than March 18, 1988. Petitioner failed to comply. After March 28, 1988, rent moneys were no longer deposited into the association account for which HPD was holding the checkbook. At about that time Williams informed HPD's Deputy Director of TIL Program's Accounting and Compliance Unit that if the submission of documentation to HPD was required in order to have petitioner's bills paid, she was going to find another way to pay the bills without having to deal with HPD. The funds being withheld were, of course, city funds.

At petitioner's request, HPD held another meeting with representatives of petitioner and the tenants on April 14,

1988. Petitioner's officers were told that they would have to assume management responsibilities and inform HPD of the specific assignments by April 22, 1988, copies of bank deposit slips would have to be submitted by April 19, 1988, and all outstanding lease renewal documents by April 29, 1988. HPD then memorialized the discussion at the meeting and the performance deadlines in a letter to the tenants dated April 19, 1988 but not meter postmarked until April 22, 1988. It was allegedly received by the tenants on April 28, 1988. In response to HPD's requests made at the April 14th meeting, petitioner submitted the same lease renewal documents previously submitted on January 15, 1988. The six documents which petitioner had failed to submit in January were once again omitted. None of the other submissions requested at the April 14, 1988 meeting was made by the deadlines.

On May 4, 1988 HPD transferred control over the specified subject premises to its central management because of the various failures herein enumerated. Petitioner thereafter commenced this proceeding to annul that determination, arguing that the deadlines set forth in HPD's letter of April 19, 1988 had, in large part, elapsed by the time the letter was received. Thus, any attempt to hold it to these impossible-to-meet deadlines violated due process. The IAS court granted the petition, finding, in essence, that petitioner's "management deficiencies are easily capable of correction with more efficient supervision from [HPD]." We reverse and deny the petition.

HPD's actions in this matter were both soundly based in reason and appropriate, given the circumstances. Despite nine years in the TIL Program, petitioner never developed the competence or will to move on to the cooperative formation phase of the program. When its last lease expired, petitioner failed to provide the requisite documentation or even to attend the lease renewal meeting. When HPD, notwithstanding, attempted to keep petitioner in the program, its efforts met with little or no cooperation. Its requests, which were reasonable, were largely ignored. The IAS court's characterization of petitioner's problems as "easily capable of correction" finds no support whatever in this record. The argument that the deadlines set forth in HPD's letter of April 1988 had elapsed prior to receipt of said letter ignores the reality of the situation. That letter merely memorialized deadlines that were timely given and as to which petitioner was repeatedly in default. Thus, we reinstate HPD's determination. Concur—Sullivan, J. P., Carro, Milonas and Rosenberger, JJ.

Smith, J., dissents in a memorandum as follows: I believe

that a hearing should be held on the petition to annul respondent's determination terminating petitioner's participation in the Tenant Interim Lease (TIL) Program. I would, therefore, remand the matter back to the IAS court for a hearing.

In a letter dated May 4, 1988 from Susan Redes, Director of the Tenant Interim Lease Program, to Ms. Ola Williams, a tenant in the building, petitioner was terminated from the TIL Program because of "problems" in the building. The letter states that the "majority of these problems involve discrepancies in the fiscal management of the building". However, neither the record nor oral argument revealed any evidence of missing or unaccounted-for funds or other specific improprieties by petitioner supporting its termination from the program.

The members of petitioner 151 West 140th Street Tenant Association (the Association) are occupants of the subject apartment building which is owned by the City of New York and administered by respondent Department of Housing Preservation and Development (HPD). Respondents established the TIL Program to afford tenants living in city-owned buildings an opportunity to manage the buildings in which they live and to eventually purchase and operate such buildings as not-for-profit residential cooperatives. As an initial step in the program, tenant associations, under an 11-month interim lease from the city, maintain and operate the building and gain management experience.

The record before us consists entirely of affidavits of the parties' representatives and of their counsel, and of correspondence between the Association and HPD.

This record indicates that petitioner executed its first lease with HPD in August 1979 and successive leases were renewed through October 31, 1987. By a form letter dated September 16, 1987, HPD advised petitioner's president, Ms. Charlie Mae Jones, of the upcoming renewal, requested certain documents, and scheduled an appointment with an HPD employee. Respondents allege, and petitioner does not dispute, that the appointment was not kept.

Respondents allege that an audit of petitioner's practices, conducted by HPD in December 1987, revealed, *inter alia,* that petitioner's bank account was overdrawn by $9,792.29, that "large management fees were being taken by the submanager" without documentation to HPD, that "rent arrears were being written-off as uncollectable without prior written approval" from HPD, that there were "unaccounted for

changes in the rent arrears" and that petitioner was "chronically late" in its submission of reports.

Respondents further allege that on January 15, 1988 the Director of the TIL Program met with representatives of the Association to discuss the audit results. A letter to Ms. Jones dated January 21, 1988 purports to summarize that discussion. Respondents further allege that on January 21, 1988 HPD representatives met with the tenants and imposed the following two conditions under which the Association could remain in the TIL Program: (1) the Association was to be responsible for total management of the building within TIL guidelines and (2) Ms. Williams was no longer to be involved in such management. The tenants, by letter of January 25, 1988, expressed their desire to maintain Ms. Williams as manager but without authority to draw checks, and by letter of February 2, 1988, HPD agreed.

Thereafter, in a letter dated March 7, 1988, HPD again complained to the Association of untimely monthly reports and that bank deposit slips and court stipulations for repairs had not been submitted to HPD. Moreover, respondents in their answer assert that after March 28, 1988 no rent moneys were deposited into the Association account for which respondents then held a checkbook and that petitioner was thereby withholding city funds.

On April 14, 1988 another meeting was held at the petitioner's request. Respondents maintain that at this meeting deadlines were set for the submission of certain documents and that these deadlines were confirmed by its letter of April 19, 1988 to petitioner. Respondents allege that in response to its April 14 request, the Association submitted the same documents which had been provided to HPD on January 15, 1988, with six requested documents again omitted. Thereafter, by letter of May 4, 1988, HPD advised the tenants that the Association had been terminated from the program.

Respondents contend that despite nine years in the program, the Association never developed sufficient cohesion or competence to proceed to cooperative formation, and that it was the Association's recalcitrance which caused HPD to conclude that valuable resources were being wasted by its continued participation in the program.

Petitioner, on the other hand, claims that since 1979, it has always made good-faith efforts to comply with HPD requirements, and that its recent failings, if any, were the result of HPD's failure to provide the Association with requested assis-

tance and support. Petitioner alleges that at the April 14, 1988 meeting, HPD representatives agreed to provide the Association with a letter outlining deadlines for remedy of perceived noncompliance, but that the April 19 letter, which was mailed on April 22 and received by petitioner on April 28, 1988, included deadlines which had already passed. The Association alleges that it had previously complied with directive number 1 of the letter regarding assumption by the Association of management responsibilities. It alleges that as to directive number 4, it delivered the lease renewal documents to respondents on April 29, 1988. As to numbers 2 and 3, which required that the Association define management tasks and turn over bank deposit slips, rent receipts and other financial records to HPD, it asserts that upon receipt of the request, the imposed deadline had passed.

Petitioner subsequently requested an extension of time to comply with HPD's demands. The Association protested the HPD action in a letter dated May 23, 1988. In this letter Ms. Jones, on behalf of the Association, states that HPD failed to advise them of the alleged discrepancies in their fiscal management of the building. She acknowledges overdrawing the bank account but states that the bank extended overdraft privileges to the Association in order to allow it to pay for emergency repairs, including repairing the elevator. This, according to Ms. Jones, had been explained to HPD representatives at every meeting. She states that HPD's refusal to provide legal assistance, as well as necessary documents, has prevented the Association from commencing holdover proceedings against tenants with rent arrears and that, as a result, the rents collected were inadequate to maintain the building.

The law is well settled that a court may not interfere with the exercise of discretion by an administrative tribunal unless there is no rational basis for the determination or the action complained of is arbitrary and capricious. *(Matter of Pell v Board of Educ.,* 34 NY2d 222, 230-231 [1974].)

Here, HPD's refusal to grant petitioner an extension of time in order to produce documents and information requested in its April 19, 1988 letter appears to be arbitrary and capricious. This is especially so in view of the absence of any evidence in the record, short of bald assertions, of misappropriation of funds or other improprieties in the conduct of petitioner or its submanager.